**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHELE OLSEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | Judge |
| | ) | |
| KENNETH YOUNG CENTER; and | ) | Magistrate Judge |
| SUSAN E. COWEN, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff, Michele Olsen, ("OLSEN"), by her attorneys, Gaffney & Gaffney P.C., for her

Complaint against Defendants, Kenneth Young Center, ("KYC"), and Susan E. Cowen,

("COWEN"), individually, states:

**Jurisdiction and Venue**

1.      This action is brought pursuant to the Fair Labor Standards Act, ("FLSA"), (29

U.S.C. § 201, *et. seq.*), to recover unpaid wages, and pursuant to the Family Medical Leave Act,

("FMLA"), (29 U.S.C. § 2601, *et. seq.*) to compensate OLSEN for economic loss and other

damages caused by Defendant's unlawful conduct. This Court has arising under jurisdiction over

OLSEN's FLSA and FMLA claims pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 216 (b), and 29

U.S.C. § 2617 (a)(2).

2.      This Court also has supplemental jurisdiction over OLSEN's state law claims for

violation of the Illinois Minimum Wage Law, ("IMWL"), (820 ILCS 105/1, *et. seq.*), the Illinois

Wage Payment and Collection Act, ("IWPCA"), (820 ILCS 115/1, *et. seq.*), and for common law

retaliatory discharge pursuant to 28 U.S.C. § 1367, which are so related to the federal claims in

this action that they form part of the same case or controversy under Article III of the Constitution of the United States of America.

3.　　Venue for this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 USCS § 1391, as this claim arose in this judicial district and KYC transacts business in this judicial district.

## Parties

4.　　Plaintiff, OLSEN is a resident of Arlington Heights, Cook County, Illinois, and a former employee of KYC.

5.　　Defendant, KYC is an Illinois not-for-profit corporation with its principal place of business located at 1001 Rohlwing Road, Elk Grove Village, Cook County, Illinois 60007.

6.　　Defendant, COWEN is an individual residing in Cook County, Illinois and since May, 2015, has been the Chief Executive Officer, ("CEO"), of KYC.

## Common Allegations

7.　　OLSEN was hired as an Administrative Assistant for KYC on or about September 23, 2013, and worked on a part-time basis until September 27, 2013.

8.　　Beginning on or about September 30, 2013, OLSEN began working on a full-time basis. Initially, she was paid an hourly rate of $21.97 per hour for the period between September 20, 2013, and October 3, 2013. Subsequent to that, OLSEN was paid at the bi-weekly rate of $1,538.46.

9.　　On or about October 3, 2013, OLSEN received a raise in her bi-weekly salary from $1,538.46 to $1,584.61, or $41,199.96 annually.

10.　　In her position as Administrative Assistant, OLSEN's duties and responsibilities included the following:

    a.   Perform agency administrative tasks and assist the CEO.

    b.   Prepare administrative correspondence, letters, memos, type out grants, contracts, and other documents under the direction of the CEO.

    c.   File and maintain records pursuant to the CEO's instructions.

    d.   Screen the CEO's phone calls.

    e.   Provide secretarial support at assigned administrative meetings.

    f.   Maintain, file, and keep track of policy manuals, leadership practice manuals, files, and incident reports.

    g.   Provide clinical administration by entering data for certain databases.

    h.   Prepare and produce meeting minutes.

11.    When initially hired, OLSEN reported to CEO, Mitchell Bruski. However, in May, 2015, Bruski left KYC and OLSEN began reporting to the newly hired CEO, Susan Cowen.

12.    In July, 2014, due to organizational restructuring, COWEN assigned both OLSEN and another coworker, Lois Colaprete some secretarial duties and responsibilities.

13.    On assuming the additional duties and responsibilities, COWEN changed Lois Colaprete's job title to Board Administrative Assistant, but kept OLSEN's job title the same.

14.    These additional responsibilities added approximately 10 or more hours per week on to OLSEN's existing job, which continued through the remaining tenure of her employment.

15.    OLSEN performed the following additional tasks:

    a.   Assist the CEO with Board administrative tasks.

    b.   Coordinate committee meetings, including Board sub-committee meetings, which COWEN typically scheduled for Wednesday evenings.

    c.   Taking minutes at sub-committee meetings.

    d.   Prepare and distribute packets of information to Board members.

    e.   Monitor Board attendance.

    f.   Provide refreshments to the Board and others who appeared before the Board.

    g.   Distribute documents to the Board upon request of the CEO and others, including agendas, calendaring future events, updating documents, practices, and policies.

    h.   Respond appropriately to all direction and control of the CEO, including the appropriate filing of what the CEO deemed to be sensitive and confidential matters.

16.    Despite the fact that OLSEN and Lois Colaprete were jointly responsible for the performance of the duties and responsibilities of that former secretarial employee's position, as OLSEN's employment continued, more and more of Lois Colaprete's tasks were being given to OLSEN. COWEN told OLSEN that she wanted to phase out Lois Colaprete and that she wanted OLSEN to be totally in charge of Board-related matters, which was a primary focus of that former secretarial employee's position.

17.    Previously, that former secretarial employee was compensated on an hourly rate basis. However, OLSEN was required to assume the duties and responsibilities of that former secretarial employee and received the same salary as she had received as the Administrative Assistant without additional compensation.

18.    OLSEN was required to work in excess of 50 hours per week.

19.    In totality, OLSEN performed non-exempt work, as defined by the FLSA. OLSEN primarily performed routine or structured tasks and administrative duties. OLSEN did

not develop corporate policies or carry out policy. OLSEN did not perform high-level administrative functions and did not exercise substantial discretionary powers free from supervision or exercise discretion or judgment in matters of significance. OLSEN worked under the direction and control of management and was responsible for daily routine decisions under management direction.

20.     KYC requested that OLSEN work extensive hours and had actual knowledge that she was working 50 hours per week or more. OLSEN had previously notified KYC and COWEN in her "pre-review" of 2014 and 2015 that "This is not a job – a job is 9-5 – this work is a mission. However, I am typically working 50 hours/week." OLSEN also complained that employees were "dumping" work on her. OLSEN further complained that the expectations of her employer was that she would be constantly available.

21.     In addition to her normal work hours, OLSEN was expected to be at the CEO's disposal at all hours, such that if COWEN needed OLSEN to call someone or send out emails during her non-working hours, OLSEN was obligated to do so. COWEN also requested that OLSEN be given a company I-phone so as to ensure OLSEN's availability. OLSEN was expected to be available at night and on weekends with her company I –Phone, which happened on a regular basis.

22.     Because OLSEN had a serious health condition, as defined by 29 C.F.R. § 825.113 and 29 C.F.R. §§ 115(c), (e), and (f), beginning in June, 2013, OLSEN had a scheduled medical appointment with a health care provider every Wednesday at 5:00 p.m. OLSEN notified COWEN and the Human Resources Manager, Cathy-Ann Romero, that she needed to attend her scheduled medical appointments to treat her serious health condition.

23.     Notwithstanding their knowledge that OLSEN had medical appointments at 5:00 p.m. every Wednesday, COWEN repeatedly scheduled OLSEN for Board and other work-related activities on Wednesday afternoons which prevented and interfered with her 5:00 pm medical appointments.

24.     On or about six different occasions, OLSEN had to cancel her medical appointment because of demands placed upon her by COWEN and KYC.

### Count I – FLSA Action (against all Defendants)

OLSEN, by her attorneys, Gaffney & Gaffney P.C., for her Count I Complaint brought pursuant to the FLSA against KYC and COWEN, states:

1-24.   OLSEN incorporates herein paragraphs 1 through 24 of the Common Allegations as paragraphs 1 through 24 of this Count I as if fully set forth herein, verbatim.

25.     At all times relevant, OLSEN was an "employee" of KYC and COWEN as defined by the FLSA. 29 U.S.C. § 203(e).

26.     At all times relevant, KYC was an "employer" as that term is defined by the FLSA. 29 U.S.C. § 203(d).

27.     At all times relevant, COWEN, an individual, was also an "employer" as that term is defined by the FLSA, by virtue of her implementation of and responsibilities for the policies and practices complained of herein. 29 U.S.C. § 203(d).

28.     Throughout her employment, OLSEN performed all duties assigned to her in a conscientious and competent manner.

29.     During her employment, OLSEN was directed to work and did work in excess of 40 hours per week. However, OLSEN did not receive overtime wages at time and a half her regular hourly rate, despite working more than forty (40) hours per week.

30.     KYC and COWEN had actual knowledge that OLSEN worked in excess of forty (40) hours per week.

31.     Throughout her employment, OLSEN's job duties and responsibilities did not render her exempt from the overtime provisions of the FLSA. 29 U.S.C. § 207.

32.     Defendants, COWEN and KYC, knowingly misclassified and re-cast OLSEN's employment relationship in an effort to avoid compliance with the terms of the FLSA.

33.     Defendants' failure and refusal to pay overtime wages for hours worked in excess of forty (40) hours per week was a willful violation of the FLSA.

34.     OLSEN is entitled to recover unpaid overtime wages for up to three (3) years prior to the filing of this lawsuit because Defendants' failure to pay overtime wages for hours worked in excess of forty (40) hours per week was a willful violation of the FLSA.

WHEREFORE, Michele Olsen respectfully requests that this Honorable Court declare Defendants, Kenneth Young Center and Susan Cowen, to be in violation of the FLSA and to:

A.  Enter a judgment in the amount of unpaid overtime wages for all time worked by OLSEN in excess of forty (40) hours in individual work weeks;

B.  Award liquidated damages to OLSEN in an amount equal to the amount of unpaid overtime wages;

C.  Award reasonable attorneys' fees and costs; and

D.  Grant such additional or alternative relief as this Honorable Court deems just and proper under the instant circumstances.

**Count II – Illinois Minimum Wage Law, ("IMWL"), Action (against all Defendants)**

OLSEN, by her attorneys, Gaffney & Gaffney P.C., for her Count II Complaint brought pursuant to the IMWL against KYC and COWEN, states:

1-34.    OLSEN incorporates herein paragraphs 1 through 34 of Count I as paragraphs 1 through 34 of this Count II as if fully set forth herein, verbatim.

35.    At all times relevant, OLSEN was an "employee" of KYC and COWEN as defined by the IMWL. 820 ILCS 105/3(d).

36.    At all times relevant, KYC was an "employer" as that term is defined by the IMWL. 820 ILCS 105/3(c).

37.    At all times relevant, COWEN, an individual, was also an "employer" as that term is defined by the IMWL. 820 ILCS 105/3(c). COWEN controlled and set OLSEN'S compensation and directed KYC to pay or not pay wages to OLSEN knowing of her extensive work hours which she demanded or encouraged.

38.    This Count arises from Defendants' failure to pay OLSEN overtime wages for all time worked in excess of forty (40) hours in individual work weeks in violation of the IMWL.

39.    Defendants directed OLSEN to work, and OLSEN did work in excess of forty (40) hours in individual work weeks. KYC knew OLSEN worked 50 or more hours per week and permitted or encouraged her to do so.

40.    OLSEN was entitled to be paid overtime wages for all time worked in excess of forty (40) hours in individual work weeks.

41.    Defendants did not pay OLSEN overtime wages for all time worked in excess of forty (40) hours in individual work weeks.

42.    Defendants violated the IMWL by failing to pay OLSEN overtime wages for all hours worked in individual work weeks.

43.    Pursuant to 820 ILCS 105/12(a), OLSEN is entitled to recover unpaid wages for three (3) years prior to the filing of this suit.

WHEREFORE, Michele Olsen respectfully requests that this Honorable Court declare that Defendants, Kenneth Young Center and Susan Cowen, have violated the IMWL and:

A.  Enter a judgment in the amount of overtime wages due to Plaintiff as provided by the IMWL;

B.  Award statutory damages for Plaintiff pursuant to the formula set forth in 820 ILCS 105/12(a) and 815 ILCS 205/2;

C.  Award reasonable attorneys' fees and costs of this action as provided by the IMWL; and

D.  Grant such other and further relief as this Honorable Court deems just and proper under the instant circumstances.

### Count III – Illinois Wage Payment and Collection Act, ("IWPCA"), Action (against all Defendants)

OLSEN, by her attorneys, Gaffney & Gaffney P.C., for her Count III Complaint brought pursuant to the IWPCA against KYC and COWEN, states:

1-43.   OLSEN incorporates herein paragraphs 1 through 43 of Count II as paragraphs 1 through 43 of this Count III as if fully set forth herein, verbatim.

44.   At all times relevant, OLSEN was an "employee" of KYC and COWEN as defined by the IWPCA. 820 ILCS 115/2.

45.   At all times relevant, KYC was an "employer" as that term is defined by the IWPCA. 820 ILCS 115/2.

46.   At all times relevant, COWEN, an individual, was also an "employer" as that term is defined by the IWPCA. 820 ILCS 115/2.  COWEN decided how much to pay OLSEN, when to pay OLSEN and the manner in which to pay OLSEN.  COWEN knowingly permitted KYC to

violate Illinois wage law by paying her a salary for non-exempt work and directing or encouraging OLSEN to work extensive hours over 40.

47.     Following the termination of OLSEN's employment on January 22, 2016, Defendants violated the IWPCA, and continue to violate it, by failing to pay OLSEN her final compensation due and owing by no later than the next regularly scheduled payday following her employment termination and by continuing in such failure to the present date.

48.     Defendants' violations of the IWPCA were and are willful and intentional. At all times, Defendants had and have had the ability to pay OLSEN her wages in a timely fashion and have at all times continued to withhold the same.

WHEREFORE, Michele Olsen respectfully requests that this Honorable Court declare that Defendants, Kenneth Young Center and Susan Cowen, have violated the IWPCA and:

A.  Enter a judgment in the amount of unpaid wages due to Plaintiff as provided by the IWPCA;

B.  Award statutory damages in the amount of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid as set forth in 820 ILCS 115/14(a);

C.  Award reasonable attorneys' fees and costs of this action as provided by the IWPCA; and

D.  Grant such other and further relief as this Honorable Court deems just and proper under the instant circumstances.

**Count IV – FMLA Interference Action (against all Defendants)**

OLSEN, by her attorneys, Gaffney & Gaffney P.C., for her Count IV Complaint brought pursuant to the FMLA against KYC and COWEN, states:

1-24.    OLSEN incorporates herein paragraphs 1 through 24 of the Common Allegations as paragraphs 1 through 24 of this Count IV as if fully set forth herein, verbatim.

25.    At all times relevant, OLSEN was an "eligible employee" of KYC and COWEN under the FMLA, as defined by the FMLA. 29 U.S.C. § 2611(2).

26.    At all times relevant, KYC was an "employer" subject to the FMLA, as that term is defined by the FMLA. 29 U.S.C. § 2611(4).

27.    At all times relevant, COWEN, an individual, was also an "employer" subject to the FMLA, as that term is defined by the FMLA. 29 U.S.C. § 2611(4).

28.    KYC has approximately 200 employees during the timeframe that OLSEN worked there.

29.    At all times relevant, KYC failed to post any FMLA notices on its premises in violation of 29 C.F.R. § 825.300 (a).

30.    At all times relevant, OLSEN was qualified to receive intermittent FMLA leave because she suffered from a "serious health condition," which rendered her unable to perform the functions of her job during her intermittent absence for medical treatment, as defined by the FMLA. 29 U.S.C. § 2611(11); 29 U.S.C. § 2612 (a)(1)(D); 29 C.F.R. § 825.123.

31.    OLSEN requested intermittent FMLA leave to go to her weekly medical appointments every Wednesday at 5:00 p.m. Defendants had actual notice that OLSEN had requested intermittent FMLA leave.

32.    Defendants never provided OLSEN with an FMLA notice after she notified KYC and COWEN that she needed to leave early on Wednesdays for her health care provider appointment in violation of 29 C.F.R. § 825.300 (b), (c), and (d).

33. Defendants interfered with OLSEN rights under the FMLA and failed to provide her with the leave to which she was entitled.

34. Defendants knew that OLSEN needed intermittent FMLA leave but failed to treat her request as such. Defendants acted with malice or reckless indifference to the federally protected rights of OLSEN.

35. As a proximate result of the practices alleged, OLSEN has suffered and will continue to suffer substantial and irreparable injury, loss of income and other monetary benefits, and other compensatory damages.

36. OLSEN demands a trial by jury on her Count IV claim.

WHEREFORE, Michele Olsen respectfully requests, as to all Defendants, that this Honorable Court:

A. Reinstate OLSEN to the same or equivalent position as she had before her FMLA leave and grant OLSEN a judgment in such sum as this Court may deem equitable and just for back-pay, back benefits, front pay and benefits, compensatory damages, and interest;

B. Grant OLSEN a judgment in such sum as this Court may deem equitable and just for liquidated damages;

C. Award OLSEN reasonable attorneys' fees and costs;

D. Award OLSEN all damages and relief available under 29 U.S.C. § 2617(a); and

E. For such other relief as this Honorable Court deems equitable and just.

### Count V – FMLA Retaliation Action (against all Defendants)

OLSEN, by her attorneys, Gaffney & Gaffney P.C., for her Count V Complaint brought pursuant to the FMLA against KYC and COWEN, states:

1-36.    OLSEN incorporates herein paragraphs 1 through 36 of Count IV as paragraphs 1 through 36 of this Count V as if fully set forth herein, verbatim.

37.    On one or more occasions, OLSEN and COWEN had disagreements regarding OLSEN's ability to leave work in order to attend her regularly scheduled medical appointments.

38.    On or about October 8, 2015, during OLSEN's performance appraisal, OLSEN expressed concern to COWEN over the lack of work-life balance due to the hours and demands COWEN placed on OLSEN. Despite COWEN's knowledge that OLSEN had regularly scheduled weekly medical appointments, COWEN stated to OLSEN, "You're not happy here," to which OLSEN responded that she enjoyed her work, but that she still needed to make her medical appointment every Wednesday at 5:00 p.m.

39.    Despite OLSEN's affirmation that she wanted to continue working for KYC and COWEN, COWEN continued to schedule OLSEN for Board appointments and other work-related tasks, which prevented OLSEN from making her regularly scheduled Wednesday medical appointments.

40.    OLSEN complained to COWEN that she had to cancel her medical appointments because COWEN insisted that she needed to perform KYC responsibilities, which required her to work past the timeframe OLSEN needed to leave in order to make her 5:00 p.m. appointment.

41.    OLSEN also complained to the Human Resources Manager, Cathy-Ann Romero, that she had to cancel medical appointments in order to meet COWEN's demands to work past the timeframe OLSEN needed to leave in order to make her 5:00 p.m. appointment.

42.    OLSEN needed to leave at approximately at 4:15 p.m. in order to arrive on time for her 5:00 p.m. appointment.

43.     OLSEN's need to attend to her medical needs by leaving every Wednesday at 4:15 p.m. became an issue with COWEN, who was dissatisfied with OLSEN because OLSEN needed to take intermittent FMLA leave.

44.     As a result, COWEN developed a retaliatory animus, which impacted COWEN's perception of OLSEN's performance. COWEN then began looking for any reason or basis to criticize OLSEN's performance and to find ways to convince Cathy-Ann Romero and the Board that OLSEN needed to be replaced.

45.     Defendants' actions in disciplining, terminating, and otherwise discriminating against OLSEN for exercising her rights under the FMLA constitute retaliation against OLSEN for exercising her rights under the FMLA and using her protected leave.

46.     There is a causal connection between OLSEN's protected activity and the adverse employment action.

47.     As a proximate result of Defendants' retaliatory acts, OLSEN has suffered and will continue to suffer substantial and irreparable injury, loss of income and other monetary benefits, and other compensatory damages.

48.     OLSEN demands a trial by jury on her Count V claim.

WHEREFORE, Michele Olsen respectfully requests, as to all Defendants, that this Honorable Court:

A. Reinstate OLSEN to the same or equivalent position as she had before her FMLA leave and grant OLSEN a judgment in such sum as this Court may deem equitable and just for back-pay, back benefits, front pay and benefits, compensatory damages, and interest;

14

B.  Grant OLSEN a judgment in such sum as this Court may deem equitable and just for liquidated damages;

C.  Award OLSEN reasonable attorneys' fees and costs; and

D.  For such other relief as this Honorable Court deems equitable and just.

## Count VI – Common Law Retaliatory Discharge

OLSEN, by her attorneys, Gaffney & Gaffney P.C., for her Count VI Complaint for common law retaliatory discharge against KYC and COWEN, states:

1-24.   OLSEN incorporates herein paragraphs 1 through 24 of the Common Allegations as paragraphs 1 through 24 of this Count VI as if fully set forth herein, verbatim.

25.   When OLSEN reported to KYC's former CEO, Mitchell Bruski, he maintained his office, with OLSEN's assistance, in an open and transparent basis wherein he gained the confidence and trust of the other employees and representatives of KYC by his open and honest communication, as well as his performance of the CEO's office duties and responsibilities in a fiscally prudent manner.

26.   During her performance under the direction of former CEO, Mitchell Bruski, OLSEN was often applauded and given positive reinforcement and performance evaluation feedback for bringing confidence and trust into the CEO's office, not only with the Board, but also with the other employees and representatives of KYC.

27.   As a not-for-profit organization, it was the duty and responsibility of all employees, including, but not limited to, the CEO, as well as OLSEN, to perform their duties and responsibilities in the best interest of the not-for-profit organization, and to not abuse or use the office of the CEO for their own personal objectives.

28.     OLSEN was apprised during her tenure of employment that as a not-for-profit entity funded by federal, state, and private funds, that KYC, had to maintain strict fiscal integrity.

29.     As part of her duties and responsibilities reporting to the CEO, it was the duty and obligation of OLSEN to conform her practices in compliance with the overall objectives of KYC, including appropriate fiscal responsibility and the strict avoidance of impropriety or the use of KYC funds for an individual's own personal objectives, use, or predilections.

30.     By OLSEN's observations, as well as the observations of others affiliated with KYC, during the timeframe that Mitchell Bruski was the CEO, the office of the CEO was maintained in a fiscally appropriate fashion and there were no questions of impropriety or the inappropriate use of funds by the CEO. He also properly insisted on transparency and honesty in his dealings with staff and others.

31.     As a not-for-profit organization funded by federal, state, and private donations and other funding that all employees of KYC, including but not limited to, the CEO had fiduciary duties and obligations to KYC, such that they would not ever use KYC funds for their own personal benefit.

32.     It was OLSEN's reasonable and good faith belief that any inappropriate use of KYC's funds for an employee's personal benefit would violate the fiduciary duty of that employee and that KYC could be held legally responsible or even potential criminal sanctions, since KYC was funded with state and federal funds.

33.     Throughout her entire tenure of employment at KYC, OLSEN maintained strict fiscal integrity and during her tenure of employment as the Administrative Assistant to former CEO Mitchell Bruski, she had no concerns about inappropriate use of KYC funds and all communications with staff about spending and finances were open and unabated.

34.    As the Administrative Assistant to the CEO, OLSEN was charged with the duty and responsibility to maintain and submit expense reports to the finance department. Such information was known to be then reported to federal and state authorities.

35.    It was OLSEN's reasonable and good faith understanding that she had a duty and obligation to KYC to honestly and accurately report all expenses incurred by any employees of KYC, whether that included the CEO or others. It was OLSEN's understanding that a failure to do so could subject herself or others and KYC to severe administrative or even criminal penalties.

36.    After COWEN became the CEO, the manner in which the CEO's office and maintenance of expense records changed. Rather than full and honest reporting, as well as complete transparency of expenses, COWEN's motto to OLSEN was "loose lips sink ships."

37.    After COWEN became CEO, OLSEN began to observe aberrations to the KYC prior policy of full and complete disclosure of the CEO's expenses.

38.    COWEN failed to provide OLSEN with full and complete documentation regarding CEO expenses. This raised a legitimate concern by OLSEN.

39.    OLSEN reasonably and in good faith believed that COWEN was abusing her authority as CEO. She observed that COWEN would charge substantial funds to KYC for dinners and social events that were excessive in nature.  Additionally, OLSEN would request that COWEN provide a receipt for certain expenses and COWEN would not produce a receipt.

40.    Based upon her observations, OLSEN reasonably and in good faith believed that COWEN was breaching her fiduciary duties owed to KYC and that such breaches could likely result in criminal fines and other sanctions because KYC was receiving public funding.

41.     Based upon her reasonable and good faith belief that KYC was potentially violating the law by the failure to make complete disclosure of expenses arising out of CEO's office, OLSEN reported such activity to the Human Resources Manager, Romero and also communicated questions and concerns to the KYC finance department.

42.     After OLSEN made her reports to Romero, COWEN learned of OLSEN's reports and became angry and upset because in her mind, OLSEN had to protect COWEN and keep all that she did and said a secret.

43.     Once COWEN learned of OLSEN's reports of COWEN's improprieties, COWEN developed a retaliatory animus towards OLSEN and as a result thereof, terminated OLSEN's employment on January 22, 2016. Such a termination violates clearly mandated Illinois Public Policy and constitutes a retaliatory discharge.

44.     As a direct and proximate result of the above retaliatory discharge, OLSEN has suffered lost wages and other forms of compensation, lost future wages, and future employment opportunities, emotional distress, and other damages which will be proven at trial.

45.     OLSEN demands a trial by jury on her Count VI claim.

WHEREFORE, Michele Olsen prays for a judgment against Defendants for actual and punitive damages, attorneys' fees and costs, and for such other and further relief as this Court may deem just and proper.

/s/Glenn R. Gaffney
Glenn R. Gaffney, Attorney for MICHELE OLSEN

Glenn R. Gaffney (No. 6180598)
Jolianne S. Walters (No. 6314222)
Gaffney & Gaffney P.C.
1771 Bloomingdale Road,
Glendale Heights, IL 60139
(630) 462-1200
gg@gaffneylaw.co
jw@gaffneylaw.co